J-A23039-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| STEVEN DALE THOME, JR. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHELLE LEA BROWN | : | |
| | : | |
| Appellant | : | No. 567 MDA 2023 |

Appeal from the Order Entered March 17, 2023
In the Court of Common Pleas of Bradford County Civil Division at No(s):
2014FC0051

BEFORE:   LAZARUS, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:        **FILED: DECEMBER 13, 2023**

Michelle Lea Brown ("Mother") appeals from the order entered March 17, 2023, awarding her physical custody of N.M.T. ("Child"), a female child born in March of 2012, under the supervision of her paramour. The order awarded Father, Steven Dale Thome, Jr. ("Father") primary physical custody. The order further awarded the parties shared legal custody. We affirm.

The parties had agreed to the entry of a custody order dated August 27, 2020 which awarded Mother and Father shared legal and physical custody of Child. Father was motivated to file a petition to modify the custody order after he was unable to locate Mother and nine-year old Child for several hours from the evening of November 13, 2021 to the early hours of November 14, 2021.

_____

[*] Former Justice specially assigned to the Superior Court.

Trial Court Opinion (T.C.O.), 7/12/22, at 1; Notes of Testimony ("N.T."), 10/31/22, 98-100, 199-202; N.T., 2/16/22, at 8, 56-61, 94, 142. Troopers discovered Mother's vehicle positioned in a roadway with the engine running and the brake lights activated while Mother was unresponsive and Child was in the backseat.[1] N.T., 2/16/22, at 7-8. Mother was charged with driving under the influence and endangering the welfare of a child.[2] *Id.* at 10-11.

Father was particularly concerned by this incident as Child is autistic and requires supervision. *See id.* at 94-95. As described by Father's fiancée, C.S., "[Child] isn't in a position where she could notify someone [in an emergency] that they need help. I don't think she would be able to call 911. I don't think she would know enough to go to a neighbor. Even if she did, she wouldn't be able to articulate what was happening. . . ." N.T., 10/31/22, at 151.

As a result, on November 19, 2021, Father filed a petition to modify custody, seeking legal and primary custody of Child, along with a petition for special relief. Father requested that the trial court compel Mother to undergo hair follicle testing for the detection of controlled substances, which the trial court granted on November 24, 2021. Father filed a supplemental petition for

_____

[1] Trooper Nicholas Walters testified that, as he was approaching, the vehicle started moving and he had to "knock on the window loudly and give verbal commands for the driver to stop the vehicle." N.T., 2/16/22, at 7-8.
[2] Despite explanations of being tired and of suffering a seizure, Mother ultimately pleaded *nolo contendere* to driving under the influence on September 9, 2022. *See* N.T., 10/31/22, at 171-72.

relief, raising concerns he shared with Mother's family members and friends that Mother has substance abuse problems that jeopardize Child's safety.

After Mother failed to appear at the preliminary custody conference, Father was granted temporary legal and primary physical custody of Child with Mother having temporary partial custody or visitation based on the agreement of the parties. Order, 1/7/22, at 1.

After the trial court granted Mother leave to file a response to the petition for special relief, a hearing was held on February 16, 2022.[3] The trial court permitted the record to remain open for Mother to obtain the deposition of her treating physician, which was filed on April 28, 2022.

On July 12, 2022, the trial court temporarily reinstated the prior shared custody arrangement with the restriction that Mother "shall not drive a vehicle while Child is a passenger in said vehicle." Order, 7/12/22. The trial court determined that Mother was incapable of safely driving when her vehicle was discovered in the middle of the road on November 13, 2021. Mother was scheduled to participate in hair follicle testing paid for by Father that week.

Thereafter, the trial court held hearings on October 31, 2022 and January 31, 2023. Mother and Father were present and testified on their own

---

[3] At the hearing on February 16, 2022, Mother and Father were each present and testified on their own behalf. The court also heard testimony from Pennsylvania State Trooper Nicholas Walters; Mother's friend, H.C.; Courtney Coleman, Bradford County Children & Youth Services; Mother's sister, R.M.; Mother's mother, L.B.; and Father's fiancée, C.S.

behalf. The court heard testimony from Claire Pratt, Child's former autistic support teacher; Mother's son, J.T.; Father's fiancée, C.S; Father's fiancé's mother, N.S.; Father's stepbrother, B.F.; Mother's sister, R.M., Mother's fiancé, C.Y.P.; and friends of Mother, R.Y., K.C., and K.Z. The trial court also incorporated the testimony from the February 16, 2022 hearing as well as the testimony of Mother's treating physician. *See* N.T., 10/31/22, at 1-2. While the court and counsel attempted to interview Child, who was ten years old at that time, the trial court found Child was not able to "focus enough to answer questions." N.T., 1/31/23, at 144-48.

In an order entered March 17, 2023, the trial court awarded the parties shared legal custody, awarded Father primary physical custody, and Mother physical custody as follows:

3. Mother shall have partial physical custody, provided her paramour, C.P. a/k/a C.Y., is present and supervises.

a. Every other weekend beginning March 11, 2023 from Saturday at 9:00 a.m. until Sunday at 6:00 p.m.

b. Every Wednesday beginning March 15, 2023 from after school until 6:00 p.m.

c. Such other times as the parties may mutually agree.

Order, 3/17/23 (cleaned up).[4,5]

---

[4] Mother and her fiancé reside together. N.T. 1/31/23, at 130; N.T., 10/31/22, at 152; N.T., 2/16/22, at 138-39.

[5] The Child Custody Act, 23 Pa.C.S.A. §§ 5321-5340, differentiates "partial physical custody" from "supervised physical custody." Specifically, it defines

*(Footnote Continued Next Page)*

The trial court also separately filed findings of fact and discussion of each of the custody factors pursuant to 23 Pa.C.S.A. § 5328(a). Notably, the trial court found that all of the factors weighed in either Father's favor or were neutral. Throughout the findings, the trial court emphasized that Mother has failed to recognize that she has drug addiction problem that places Child at a continued risk of harm. *See* Findings of Fact and Discussion of Factors, 3/17/23, at 7. The trial court noted that as Child is autistic and requires 24/7 supervision, Father is more capable of attending to Child's special needs as Mother is obviously struggling from drug addiction. *Id*. at 4-5. The trial court also found that Child was "unable to provide an articulated preference" with respect to the custody determination. *Id*. at 4. Further, the trial court found that Mother had alienated her family members including her adult son, J.T., who had been removed from Mother's care while he was a minor. *Id*.

On April 14, 2023, Mother, through counsel, filed a timely notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court issued a Rule 1925(a) opinion dated May 19, 2023, and filed May 22, 2023.

---

"partial physical custody" as "[t]he right to assume physical custody of the child for less than a majority of the time" and "supervised physical custody" as "[c]ustodial time during which an agency or an adult designated by the court or agreed upon by the parties monitors the interaction between the child and the individual with those rights." 23 Pa.C.S.A. § 5322. While the trial court purported to award Mother "partial physical custody," we deem Mother's custody award more properly as supervised physical custody.

On appeal, Mother raises the following issues for our review:

1.) Did the [t]rial [c]ourt abuse its discretion by deeming the testimony of [Mother's older son, J.T.] as true?

2.) Did the [t]rial [c]ourt abuse its discretion by deeming the testimony of [Mother's sister, R.M.] to be true?

Mother's Brief at 4.[6]

We review custody orders for an abuse of discretion. **See R.L. v. M.A.**, 209 A.3d 391, 395 (Pa.Super. 2019). We will not find such an abuse merely because we would have reached a different conclusion. **See id.** Rather, an abuse of discretion occurs only if the trial court overrode or misapplied the law in reaching its conclusion, or the record shows the trial court's judgment was

_____

[6] We note with disapproval several procedural deficiencies related to Mother's brief. Specifically, the argument section of Mother's brief is not separated by the issues raised with distinct headings. Rather, Mother provides 23 continuous pages of discussion without division or distinction. **See** Pa.R.A.P. 2119(a) (stating, "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."). Additionally, Mother fails to cite to the record in the statement of the case portion of her brief. **See** Pa.R.A.P. 2117(a)(4) (requiring in part, "A closely condensed chronological statement, in narrative form, of all the facts which are necessary to be known in order to determine the points in controversy, with an appropriate reference in each instance to the place in the record where the evidence substantiating the fact relied on may be found.") (internal citation omitted). However, as we are able to discern the general issues raised and related arguments, and we perceive no prejudice, we proceed with the merits of Mother's appeal. **See** Pa.R.A.P. 2101 (stating, "Briefs and reproduced records shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they may be suppressed, and, if the defects are in the brief or reproduced record of the appellant and are substantial, the appeal or other matter may be quashed or dismissed.").

manifestly unreasonable or the product of partiality, prejudice, bias, or ill will. ***See id.***

Moreover, our scope of review is broad. ***See id***. Because this Court does not make independent factual determinations, however, we must accept findings of the trial court that are supported by competent evidence of record. ***See S.C.B. v. J.S.B.***, 218 A.3d 905, 913 (Pa.Super. 2019). **Importantly, we defer to the trial court on matters of credibility and weight of the evidence, as the trial court viewed and assessed witnesses firsthand.** ***See id.*** (emphasis added). We are not, however, bound by the trial court's deductions or inferences. ***See id.*** "Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court." ***E.D. v. M.P.***, 33 A.3d 73, 76 (Pa.Super. 2011) (quoting ***A.D. v. M.A.B.***, 989 A.2d 32, 35-36 (Pa.Super. 2010)).

"When a trial court orders a form of custody, the best interest of the child is paramount." ***S.W.D. v. S.A.R.***, 96 A.3d 396, 400 (Pa.Super. 2014). "The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being." ***M.J.N. v. J.K.***, 169 A.3d 108, 112 (Pa.Super. 2017).

To that end, the Child Custody Act sets forth sixteen factors that a court must consider before making any custody determination. *See E.B. v. D.B.*, 209 A.3d 451, 460 (Pa.Super. 2019). "It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *Id.* (citation omitted). The statutorily required factors are as follows:

**§ 5328. Factors to consider when awarding custody.**

**(a) Factors.** – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a). In assessing these factors,

[a] trial court must "delineate the reasons for its decision when making an award of custody either on the record or in a written opinion." *S.W.D.*, [96 A.3d at 401]. *See also* 23 Pa.C.S.[A.] § 5323(a) and (d). However, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision

is based on those considerations." ***M.J.M. v. M.L.G.***, 63 A.3d 331, 336 (Pa.Super. 2013).

***R.L.***, 209 A.3d at 395.

In the case *sub judice*, the trial court addressed and analyzed all of the custody factors pursuant to Section 5328(a). ***See*** Findings of Fact and Discussion of Factors, 3/17/23, at 1-9. The court did not determine that any factors were in favor of Mother. Rather, the court determined that all factors were in favor of Father, neutral, or not applicable. ***See id.***

With both issues raised on appeal, Mother challenges the trial court's credibility determinations with respect to the testimony of her son, J.T., and her sister, R.M, claiming that "[t]he [t]rial [c]ourt abused its discretion when it deemed the testimony of [J.T.] and [R.M.] as true, when in fact they testified to obvious falsehoods."[7] Mother's Brief at 7, 18-21, 23-29, 32.

Because Mother's issues, at their core, dispute the trial court's determinations regarding credibility and weight of the evidence, they fail. ***See S.C.B.*** 218 A.3d at 913 (reiterating that we defer to the trial court on matters of credibility and weight of the evidence, as the trial court viewed and assessed witnesses firsthand). Further, in custody cases, it is well-established that it is

---

[7] To the extent Mother challenges the credibility of her friend, H.C., such argument is waived for failure to raise it in her concise statement and/or statement of questions involved. ***See In re M.Z.T.M.W.***, 163 A.3d 462, 466 (Pa.Super. 2017) (reiterating that issues not included in a court-ordered Rule 1925(b) statement and statement of questions involved are waived). To the extent the argument section of Mother's brief discusses issues not raised in her statement of questions involved, such issues are also waived. ***Id.***

within the purview of the trial court to determine which statutory factors "are most salient and critical." *E.B.*, 209 A.3d at 460.

Instantly, the trial court's consideration of the custody factors was careful and thorough. *See* Findings of Fact and Discussion of Factors, 3/17/23. After careful review of the record, we determine that the court's factual findings are supported by the record, and the court's conclusions in light of those findings are reasonable. As such, we discern no abuse of discretion. *See King v. King*, 889 A.2d 630, 632 (Pa.Super. 2005) (quoting *Hanson v. Hanson*, 878 A.2d 127, 129 (Pa.Super. 2005) (stating, "[i]t is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, [giving] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion. . . .").

For the foregoing reasons, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/13/2023

- 11 -